MALLORY (RUSSELL & ERWIN MANUF'G CO. v.). See Case No. 12,166.
MALLORY (TARLETON v.). See Case No. 13,753.

---

## Case No. 8,993.

MALLORY et al. v. WHITE.

[8 Blatchf. 552; 4 Fish. Pat. Cas. 628.] [1]

Circuit Court, S. D. New York. Aug. 30, 1871.

PATENTS—MEN'S HATS—METAL FRAME—INFRINGEMENT.

1. The letters patent granted to Thomas W. Adams and Charles H. Slicer, December 24th, 1861, for an "improvement in men's hats," are valid.

2. The claims of such patent—(1.) In the construction of men's hats, when the brims are of flexible or yielding material, giving the front and side curves to the brim by means of a frame of cane, metal, or other material, confined within, or attached to, the brim at or near its circumference, substantially as and for the purposes set forth. (2.) In combination with a hat brim constructed as claimed in the preceding clause, the head band o, for the purpose of preserving the symmetry of the body of the hat, substantially as described—are infringed by a hat which has the features specified in the claims, although the frame in it is a continuous piece of metal, the ends of which are joined by soldering, while, in the specification of the patent, the frame is described as being inserted in a sleeve, tube or ferrule, and although draw-strings are used in it, in connection with the case for the frame, to effect a result in addition to the result attained by the patented construction.

[This was a bill in equity, filed [by George Mallory and the Mallory Manufacturing Company] to restrain the defendant [George W. White] from infringing letters patent [No. 34,043] for "improvement in men's hats," granted to Thomas W. Adams and Charles H. Slicer, December 24, 1861, as assignees of said Adams, which letters patent were assigned to complainants.

[The claim was as follows:

["What I claim, etc., in the construction of men's hats, when the brims are of flexible or yielding material is, giving the front and side curves to the brim by means of a frame of cane, metal, or other material, confined within or attached to the brim, at or near its circumference, substantially as and for the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 8 Blatchf. 552; and the statement is from 4 Fish. Pat. Cas. 628.]

purposes set forth. In combination with a hat brim constructed as claimed in the preceding clause, I claim the head-band o, for the purpose of preserving the symmetry of the body of the hat, substantially as described."] [2]

Solomon J. Gordon, for plaintiffs.
The defendant, in pro. per.

BLATCHFORD, District Judge. This bill is brought by the plaintiffs as the owners of letters patent of the United States granted to Thomas W. Adams and Charles H. Slicer, December 24th, 1861, on the invention of said Adams, for an "improvement in men's hats." The specification says: "The nature of my improvement in the manufacture of hats consists in giving such an excess in the length of a reed or other non-extensible flexible article, over that of the outer edge of the brim of the hat formed of an extensible material, that, when said reed is inserted and forced in a case on said outer edge, it shall give not only firmness to the brim, but also a rising curvature thereto, of any desirable configuration. By virtue of this invention or discovery of extra length of reed confined in the fabric of the hat, I am enabled to make them of the lightest material that shall retain their shape, at an inconsiderable cost. Those hats also admit of being folded up in a small space, by simply twisting the reed in the brim into the shape of an S, making them peculiarly portable, without damage to the shape. In the course of continuous experiments, occupying much time and attention, I have discovered and applied successfully the principle, that each portion of the arch forming the edge of the brim has its chord formed of the breadth of the brim of the hat. Furthermore, I have found that, by employing a band sewed to the lower edge of the body and inner edge of the brim, in conjunction with my reed, I prevent stretching the body and throwing the hat out of shape. As a simple means of joining the reed ends in the reed case, I have employed a short tube or sleeve, which allows the swivelling of the cane reed, in folding the hat, and it also prevents injury to the fabric composing it, in the removal or return of the reed, in washing or doing up the hat. My improvement is applicable to any shape of hat or cap in which a continuous spring or flexible reed can be inserted." The specification then proceeds to give general directions how to make hats or caps on such improved principle. remarking, that there will necessarily be slight changes in different patterns, that will suggest themselves to an intelligent operative. The hat brim is cut on an oval block pattern board, out of any woven or felted material, the former being preferable, as it is cheap and allows the drawing or tension of the reed. The body is cut arched or rising over the ears, having its edges parallel or nearly so. The tip or crown is cut oval or round, as desirable. A bag hat, in which fullness is given to the body, is cut in sections. The crown is sewed to the body, the head band having been sewed or basted thereto. Then the lower edge thereof is joined to the inner edge of the brim. The outer edge of the brim may either have the reed case formed by turning over the edge of the material, or it may be formed of wide binding; forming thus a case. The hat is now ready for the insertion of the spring reed, or its substitute, into the reed case. A small metal tube or ferrule is confined half its length on the end of the reed, the other end of the reed being forced and strained in the remaining half of said ferrule, such an extra length having been given to the reed, as to effect the stretching of the width of the brim, and giving any desirable configuration thereto. The claim is in these words: "What I claim as my invention and desire to secure by letters patent, in the construction of men's hats, when the brims are of flexible or yielding material, is, giving the front and side curves to the brim by means of a frame of cane, metal or other material, confined within, or attached to, the brim at or near its circumference, substantially as and for the purposes set forth. In combination with a hat brim constructed as claimed in the preceding clause, I claim the head band o, for the purpose of preserving the symmetry of the body of the hat, substantially as described."

The bill alleges, that the defendant has infringed the patent, by making and selling hats containing the patented improvements. The defences are non-infringement, and want of novelty in the improvements claimed.

The hat put in evidence as an infringement is the one marked Exhibit G. The record contains an admission by the defendant, that, in the year 1869, and prior to the filing of the bill, he made and sold ten hats like Exhibit G. There can be no doubt that that hat is an infringement of both of the claims of the patent. It has a brim of flexible woven material. A frame of metal is confined in the brim near its outer circumference, the outer edge of the brim being turned over, so as to form a case for the frame. The frame not only strains the brim, but gives to it its front and side curves. The frame effects this result because it has the excess in length over the length of the case in the outer edge of the brim, into which it is inserted, which the specification speaks of as the main feature of the first claim of the patent, and which, it says, not only gives firmness to the brim, but gives a rising curvature thereto. Such rising curvature exists in Exhibit G, and is caused by such extra length of the frame. Such extra length, in Exhibit G, is, by measurement, over an inch, and makes it necessary to insert the frame into its case by forcing, straining, or springing it in. It is true, that, in Exhibit G, the frame is a continuous piece

---

[2] [From 4 Fish. Pat. Cas. 628.]

of metal, its ends being joined by soldering, and that, in the specification, the ends of the frame are joined by being inserted in a sleeve, tube, or ferrule. But this is an immaterial point, not of the essence of the invention. The one mode of joining the ends is the equivalent of the other, so far as the improvements covered by the claims of the patent are concerned. So, too, the fact, that, in Exhibit G, there are draw strings used in connection with the case for the frame, makes no difference. The draw strings are used to effect a result in addition to the result attained by the plaintiffs' construction; but Exhibit G embodies none the less the plaintiffs' improvements, because it has the draw strings in addition. Exhibit G also has, in combination with such brim and frame, a head band, substantially such as that described in the plaintiffs' specification, and used for the same purpose.

On the question of novelty, the inventor, Adams, is shown to have filed in the patent office, on the 4th of September, 1857, an application for a patent, on a specification, drawings, and model fully showing the improvements covered by the patent sued on. The model was a hat in all respects constructed like the hat described in the specification of the patent sued on. That application was rejected by the commissioner, and by the board of examiners, on appeal. There can be no doubt, on the evidence, that Adams invented, as early as September, 1857, the improvements covered by the plaintiffs' patent. The defendant has failed to show that such improvements existed previously. The testimony of Mealio, Knox, and Rahmer does not carry back to a date earlier than 1860, the hats which they knew containing the patented improvements. As to the hats of Rosenswig, the evidence is satisfactory that their date was not earlier than 1858 or 1859. As to the Davis hats, the proof shows that they were made as copies of the hat deposited in the patent office by Adams, in connection with his application of September, 1857, such hat having been used as a pattern from which some hats were made, from one of which Davis made his hats.

Adams, in 1861, assigned to Slicer a half interest in the improvements, and then a new application for a patent was made by Adams and Slicer. No defence is set up that the improvements were in public use or on sale, with the consent and allowance of Adams, for more than two years prior to the application of 1861; and there is no evidence that Adams knew there had been any public use or sale of his hat before such application of 1861.

There must be a decree for the plaintiffs, for a perpetual injunction, and an account of profits, with costs.